IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONICA REISS, | : | CIVIL ACTION |
|      Plaintiff | : | |
| | : | |
| VS. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
|      Defendant | : | NO. 07-3754 |

### REPORT AND RECOMMENDATION

**LINDA K. CARACAPPA**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Monica Reiss, brought this action under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's claim for supplemental security income (SSI) under Title XVI of the Social Security Act (Act). The parties have filed cross-motions for summary judgment. For the reasons which follow, it is recommended that both motions be denied and the case remanded to the Commissioner.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a fifty (50) year-old female born on June 12, 1957 (Tr. 316). Plaintiff has a high school education, and some community college credits. Plaintiff also has past work experience as a tie presser, production worker, editing supervisor, janitor, building maintenance

mechanic, and machine operator (Tr. 71-72).  Disability is alleged as of November 30, 1996 due to depression, anxiety, degenerative osteoarthritis, seizure disorder, and asthma (Tr. 203).

We note as history only that plaintiff filed three previous applications for SSI on May 18, 1979, September 27, 1990, and November 20, 1997 (Tr. 26).  With regard to the November 1997 application, on May 7, 2000, Administrative Law Judge (ALJ) concluded that the plaintiff was not disabled for the time period covering November 30, 1996 through March 7, 2000 (Tr. 14-23).

Plaintiff filed her instant application July 21, 2003 alleging disability since November 1997.[1]  The claim was denied initially, and she then requested a hearing before an Administrative Law Judge (ALJ).  A hearing was held on April 21, 2005, at which, plaintiff testified, along with a vocational expert (VE) and two witnesses (Tr. 433-451).  In a decision dated, October 18, 2005, the ALJ determined that the plaintiff has the following severe impairments: "[A]lcohol dependence; Seizure disorder, not medically confirmed in full; Degenerative joint disease, left knee; and Depressive disorder."  The ALJ added that plaintiff's hypertension and asthma are non-severe impairments.  The ALJ, however, further determined the plaintiff retains the residual functional capacity to perform a range of sedentary work.  Plaintiff was, thus, found not to be entitled to benefits (Tr. 26-35).

The ALJ's findings became the final decision of the Commissioner when the Appeals

---

[1] The Commissioner makes a point of calling plaintiff a "habitual disability claimant" in his summary judgment brief because she filed three previous applications.  We, however, infer nothing negative from these prior applications as it is entirely possible that plaintiff suffers with new medical conditions or her previous ones have deteriorated to the point that she would be entitled to benefits.  Plaintiff's current application, however, is limited by a final determination by the Commissioner that she was not disabled on or before March 7, 2000.  20 C.F.R. §§ 416.1455, .1487.  In addition, SSI is not retroactive. 20 C.F.R. § 416.335 (2007). Accordingly. even if plaintiff could prove disability, the earliest month she could receive SSI benefits is the month she filed this current application, July 21, 2003.

Council denied plaintiff's request for review on July 17, 2007 (Tr. 8-10). Presently, plaintiff has appealed that decision to this court.

### **JUDICIAL REVIEW**

The role of this court, on judicial review, is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Pierce v. Underwood, 587 U.S. 552 (1988). "Substantial evidence" is not "a large or significant amount of evidence but rather such relevant evidence as a reasonable mind might accept to support a conclusion." Id. at 664-65. "The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

To establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Stunkard v. Secretary of Health and Human Services, 841 F.2d 57 (3d Cir. 1988), quoting Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423(d)(1) (1982). A claimant can establish such a disability in either of two (2) ways: (1) by producing medical evidence that one is disabled per se as a result of meeting or equaling certain listed impairments set forth in 20 C.F.R. Regulations No. 4, Subpart P, Appendix 1 (1987); see Heckler v. Campbell, 461 U.S. 458 (1987); Stunkard v. Secretary of Health and Human Services, 841 F.2d at 59; Kangas v. Bowen, 823 F.2d at 777; or (2) by demonstrating an impairment of such severity as to be unable to engage in "any kind of substantial gainful work which exists in the national economy." Heckler v. Campbell, 461 U.S. at 461; 42 U.S.C. § 423(d)(2)(A).

These methods of proving disability require that the claimant first show inability to return to former work due to a physical or mental impairment. Once a claimant has demonstrated inability to perform former work, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment claimant is able to perform, taking into consideration the claimant's physical ability, age, education and work experience. See Kangas v. Bowen, supra; Rossi v Califano, 602 F.2d 55, 57 (3d Cir. 1979); 42 U.S.C. § 423(d)(2)(A).

This case was decided under the medical-vocational regulations which require a five-step sequential evaluation of disability claims. See generally, Heckler v. Campbell, supra; Santise v. Schweiker, 676 F.2d 925 (3d Cir. 1982). The sequential evaluation considers in turn current work activity, the severity of impairments, the ability to perform past work and vocational factors. 20 C.F.R. §§ 404.1520 and 416.920.

In this case, the Commissioner reached the fifth step of the evaluation and determined that plaintiff is capable of performing a limited range of sedentary work.

## MEDICAL HISTORY

The relevant evidence in this case consists of medical reports and testimony which are summarized as follows:

Plaintiff had a left knee arthroscopy performed on January 27, 1999 by Dr. Stephen Falatyn. Plaintiff had been diagnosed with a left knee medial meniscal[2] tear. Post operative diagnosis was "moderate lateral compartment degenerative joint disease" (Tr. 149).

---

[2]Meniscus- a general term for a crescent- shaped structure of the body. Often used to designate one of the crescent-shaped disks of fibrocartilage attached at the superior articular surface of the tibia. Dorland's Illustrated Medical Dictionary, Twenty-ninth Edition, 2000, p. 1085.

Office notes from Dr. Falatyn dated September 15, 1999 indicate that plaintiff had moderate knee pain and walked with a slight limp. Dr. Falatyn wrote further that an arthroscopy showed moderate arthritic changes of the knee. Dr. Falatyn added that plaintiff requested that Dr. Falatyn sign a form stating that plaintiff was disabled for 12 months. Dr. Falatyn indicated that this would be appropriate, but plaintiff should be able to go to work without restrictions starting August 2000 (Tr. 145).

Plaintiff was seen by Dr. David Leh at St. Luke's Hospital on September 5, 2002 with a chief complaint of chest pain. Plaintiff admitted being a pack-a-day smoker for 25 years and using alcohol on a daily basis. Chest x-rays showed "no acute cardiopulmonary pathology" (Tr. 267-275).[3]

Plaintiff was evaluated by Dr. Sam Weng on November 6, 2003 at the request of the Pennsylvania Bureau of Disability Determination. Plaintiff gave Dr. Weng a history of her medical problems beginning with injuries sustained in a car accident when she was 19 years old. Plaintiff stated that she recovered but became depressed and started taking drugs. She stopped taking drugs after about two years, but started drinking alcohol to control arthritic pain. Plaintiff added that she tried to take her own life several times, and her depression caused her not to be able to work and continue to drink. She was also homeless for a time begging for money for alcohol. Plaintiff's present complaint was arthritic pain all over her body. She is unable to sleep and drinks to kill the pain. Plaintiff also still had suicidal thoughts and can't deal with people. Plaintiff denied chest pain. Upon physical examination, Dr. Weng found plaintiff able to walk

---

[3]The record contains progress notes from St. Luke covering 2002 through 2003 which are handwritten and almost entirely illegible.

without difficulty and needed no assistance.  Dr. Weng noted that he smelled alcohol on her breath.  Dr. Weng found no gross neurological deficits and diagnosed her with depression, alcohol abuse which may be an addiction, and degenerative osteoarthritis in the lumbosacral spine and knee (Tr. 341-345).

Dr. Weng also completed an Ability to Perform Work-Related Physical Activities form.  Dr. Weng opined that plaintiff was capable of occasionally lifting ten pounds and frequently carrying 2-3 pounds.  Dr. Weng further opined that plaintiff could only stand and walk one hour or less, and sit 2 hours in an 8-hour workday (Tr. 347-348).

On December 18, 2003, consulting doctor, Linda Mascetti, Ph.D., completed a Mental Technique form and a Mental Capacity form at the request of Social Security.  Dr. Mascetti opined that plaintiff had personality and substance addiction disorders which "moderately" limit her activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace.  Dr. Mascetti wrote that plaintiff has alcohol and mixed personality disorder which "interfere with her ability to maintain attention, concentration, and persistence, especially for detailed/complex tasks.  She has limited judgment and impulse control.  However, plaintiff remains able to do basis ADLS (activities of daily living and self care), and can communicate and relate adequately.  She retains the capacity to perform simple, repetitive tasks" (Tr. 359-376).

Plaintiff was seen at the Lehigh Valley Community Mental Health Center on September 2, 2004.  Plaintiff reported she was depressed and anxious with a change in mood, appetite, weight, and sleep patterns.  Plaintiff also experienced substance abuse, sexual abuse, domestic violence, and was a victim of violence.  Plaintiff further reported having visual hallucinations, inattention, learning difficulties, and changes in conduct.  Plaintiff's evaluation form indicated

that she frequently had a depressed mood, had a past history of alcohol abuse, and auditory hallucinations, and she was diagnosed with major depressive disorder, recurrent type with psychosis.  Her current GAF [4] was given as a 50 (Tr. 379-385).

Plaintiff was again seen at the Lehigh Valley facility on March 8, 2005.  Her mood was described as sad and anxious, affect constricted and blunted, and cognitive memory fair.  Plaintiff had auditory hallucinations, was diagnosed with major depression, and was again assessed a GAF of 50 (Tr. 388-390).

Plaintiff was an in-patient at Pyramid Healthcare from December 9, 2004 through January 10, 2005 for alcohol addiction treatment.  Dr. Brett Scarf wrote in a treatment summary that plaintiff  "made limited progress in identified treatment areas.  She exhibited self-defeating behaviors at various times during the course of her treatment stay.  It is unlikely that she will surrender until she experiences further negative consequences of use and her progress for recovery is poor."  Plaintiff's discharge diagnosis was alcohol dependence, dysthymic disorder[5], generalized anxiety disorder, hypertension, asthma, arthritis, and seizures.  Her GAF was given as a 40, and she was discharged against medical advice (Tr. 422).

Plaintiff testified at the time of the administrative hearing on April 21, 2005 that she had

---

[4] A Global Assessment of Functioning is the scale of psychological, social, and occupational functioning on a hypothetical continuum of mental health, illness.  A GAF of 41-50 indicates serious symptoms, including the inability to keep a job.  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV).

[5] Dysthymic Disorder- a mood disorder characterized by depressed feeling (sad, blue, low), loss of interest or pleasure in one's usual activities, and by at least some of the following: altered appetite, disturbed sleep patterns, lack of energy, low self esteem, poor concentration or decision-making skills, and feelings of hopelessness.  Symptoms have persisted for more than two years but are not severe enough to meet the criteria for major depressive disorder.  Dorland's at 529.

stopped drinking and was currently sober for 132 days. Plaintiff stated that she was unable to work because she didn't feel up to it mentally or physically and needed another knee surgery. Plaintiff added that she earns her rent with a friend by doing dishes and vacuuming for her friend at night (Tr. 441-444).

Plaintiff's friend of twenty years and onetime landlord, Emma Davis, also testified at the hearing. Ms. Davis stated that plaintiff had not been drinking since getting out of the Pyramid program. Ms. Davis testified further that plaintiff doesn't remember anything, cries all the time, and has seizures where she shakes and drools and then sleeps for a few hours. Ms. Davis also noted odd behavior by the plaintiff in that plaintiff goes off to a playground and just sits there all day swinging, and this behavior occurred whether plaintiff was drinking or sober (Tr. 445-447).

Ms. Davis' husband, Reid Davis, also testified on behalf of the plaintiff. Mr. Davis corroborated his wife's testimony and stated that plaintiff seems to have amnesia at times, forgets a lot, and has periodic seizures. Mr. Davis also testified that plaintiff had entered the alcohol program and he had not seen plaintiff drinking since her release (Tr. 447-448).

## **DISCUSSION**

The Commissioner's findings must be affirmed if they are supported by substantial evidence. 42 U.S.C. § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). The role of this court is to determine whether there is substantial evidence to support the Commissioner's decision. <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992), <u>cert. denied</u>, 507 U.S. 924, 113 S. Ct. 1294 (1993).

In coming to a decision, it is the ALJ's responsibility to resolve conflicts in the evidence

and to determine credibility and the relative weights to be given to the evidence. <u>Richardson v. Perales</u>, <u>supra</u>.

In this case, the ALJ found that the medical evidence establishes that plaintiff has the following "severe" impairments: "Alcohol dependence; Seizure disorder, not medically confirmed in full; Degenerative joint disease, left knee; and Depressive disorder." The ALJ added that hypertension and asthma were not severe impairments. The ALJ, however, further determined that plaintiff has the "residual functional capacity to perform the requirements of sedentary work[6]. She is able to stand and walk up to two hours and sit up to six hours in an eight-hour workday with normal breaks. She is limited to simple repetitive work consistent with the regulatory definition of unskilled work. She must avoid unprotected elevations and dangerous moving machinery." The ALJ, therefore, found that the plaintiff not entitled to benefits (Tr. 26-35). For the reasons which follow, this court finds that the ALJ's decision is not supported by substantial evidence, and the matter should be remanded to the Commissioner.

We first address the issue of plaintiff's mental impairments. In dismissing plaintiff's claims that plaintiff suffers from disabling mental impairments, the ALJ basically relied on two sources in the record. The ALJ wrote that Dr. Linda Mascetti, Ph.D., the state agency psychological consultant, found the plaintiff only moderately limited in concentration, persistence or pace, and able to do simple repetitive tasks (Tr. 31). The ALJ also wrote that the plaintiff was evaluated at Lehigh Valley Community Mental Health in September 2004 by a

---

[6]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

social worker and, in March 2005 by a psychiatrist, and that plaintiff was diagnosed with depressive disorder with alcohol dependence and post traumatic syndrome. Based on these reports, the ALJ concluded that plaintiff's "mental impairments (depression and alcohol dependence) limit her to simple repetitive work (i.e., unskilled work consistent with the definition at 20 C.F.R. 416.968(a)- work which needs little or no judgment, to do simple duties that can be learned on the job in a short period of time)" (Tr. 33).

There is no question in this case that plaintiff has a history of alcohol abuse which has affected her mental health. It is well settled that the plaintiff cannot be determined to be disabled due to alcoholism and/or drug abuse. On March 29, 1996, Congress amended the Social Security Act to preclude the award of benefits to claimants who were disabled by alcoholism or drug addition. *See* Pub.L No. 104-121, Section 105, 110 Stat. 847, 852 (1996)(codified as amended 42 U.S.C. Section 423(d)(2)(c).

However, we are of the opinion in this case that the sources relied upon by the ALJ dismissing disability due to mental impairments do not amount to substantial evidence supporting her decision. We find that the current record needs further development regarding plaintiff's mental impairments and the effect these impairments have on plaintiff's ability to work, and also the extent, if any, that alcohol abuse has on plaintiff's emotional state. Pursuant to 20 C.F.R. § 404.1535(a) of the Social Security Regulations, a claimant would not be entitled to Social Security benefits if she were determined to be disabled, but her drug and/or alcohol addiction was a "contributing factor material to the determination of disability." 20 C.F.R. § 404.1535 (b)(1) provides that: "[T]he key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is

whether we would still find you disabled if you stopped using drugs or alcohol."

It must be first noted that Dr. Mascetti did not examine or personally evaluate the plaintiff in coming to her conclusions. Dr. Mascetti only reviewed what little evidence there was in the record regarding plaintiff's mental health in rendering the opinion that plaintiff has personality and substance addiction disorders which only "moderately" limit plaintiff's activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 359-376). Plaintiff was never given a mental evaluation by an examining physician at the direction of social security.

Next, the reports from the Lehigh Valley Community Mental Health Center, although very limited, do indicate that plaintiff has serious mental impairments and limitations. This point was neglected by the ALJ in her decision. Plaintiff was evaluated at the Lehigh Center in September 2004 and found to have a depressed mood with auditory hallucinations. Plaintiff was diagnosed with "major depressive disorder, recurrent type with psychosis," and assessed a GAF of 50 (Tr. 379-385). Plaintiff was again seen at the Lehigh facility in March 2005. At that time, plaintiff's mood was found to be sad and anxious, and her affect constricted and blunted. Plaintiff was diagnosed with major depression and again assessed a GAF of 50 which according to the Diagnostic and Statistical Manual of Mental Disorders indicates serious symptoms, including the inability to keep a job[7] (Tr. 388-390).[8]

It must be noted that during the time period that plaintiff was seen at Lehigh, plaintiff did enter an inpatient alcohol rehabilitation program called Pyramid Healthcare. Plaintiff was

---

[7]See footnote 4.

[8]The summary from this St. Luke's evaluation is handwritten and almost entirely illegible, and thus, it is unclear to us whether plaintiff was diagnosed with alcohol dependence at this time (Tr. 390).

admitted at Pyramid on December 9, 2004 and remained for 32 days until January 10, 2005. Plaintiff left on this date against medical advice and was given an unfavorable discharge report from Dr. Brett Scarf. Dr. Scarf reported that plaintiff "made limited progress in identified treatment areas. She exhibited self-defeating behaviors at various times during the course of her treatment stay. It is unlikely that she will surrender until she experiences further negative consequences of use and her progress for recovery is poor." Plaintiff's discharge diagnoses were alcohol dependence, depression, generalized anxiety and a number of physical problems. Plaintiff was assessed a GAF of 40 (Tr. 422).

Plaintiff, however, testified at the administrative hearing on April 21, 2005 that she was currently sober for 134 days (Tr. 441). Two of plaintiff's friends, Emma[9] and Reid Davis, testified at that hearing that plaintiff had not been drinking since entering the Pyramid Program and that plaintiff suffers with memory problems, cries all the times, and experiences seizures. Emma Davis also testified about plaintiff's odd behavior in that plaintiff will often go off alone to a playground and sit there all day swinging on a swing (Tr. 445-448).

For the reasons stated above, we are of the opinion that the record in this matter has not been developed sufficiently regarding plaintiff's mental impairments. We, therefore, conclude that the case should be remanded for the plaintiff to be given a comprehensive mental examination and evaluation by an examining physician. Such examination should first focus on whether plaintiff is suffering with mental impairments that affect plaintiff's ability to do gainful employment . If the examining physician concludes that plaintiff does indeed suffer with

---

[9]Ms. Davis testified that she has been friends with the plaintiff for twenty years and was also plaintiff's landlord for a period of time (Tr. 445-446).

disabling mental impairments, the physician should then attempt to determine if plaintiff is addicted to alcohol and attempt to render an opinion whether alcohol addiction is a "contributing factor material to the determination of disability." As noted earlier, plaintiff would be considered disabled by a mental impairment(s), if plaintiff would still be disabled if she stopped using alcohol. See C.F.R. § 404.1535(a). Accordingly, upon remand, the ALJ would first make a decision whether plaintiff was disabled from working due to mental impairments, and then make a determination whether alcohol addiction is a "contributing factor material to the determination of disability."[10]

Therefore, the court makes the following:

---

[10] We also find the ALJ determination that plaintiff does not suffer with physical impairments which would prevent plaintiff from performing limited sedentary work is supported by substantial evidence. In November 2003, plaintiff was evaluated by Dr. Sam Weng at the request of social security. Dr. Weng opined that plaintiff was incapable of doing even sedentary work. Dr. Weng checked off in an "Ability to Perform Work-Related Activities" form that plaintiff was only capable of occasionally lifting 10 pounds, frequently carrying 2-3 pounds, standing and walking 1 hour or less, and sitting 2 hours in an 8-hour workday (Tr. 347-348).

The ALJ rejected this assessment of Dr. Weng as not supported by the entire record and or Dr. Weng's examination. We agree. Dr. Weng found plaintiff able to walk without difficulty and found "no gross neurological deficits." Dr. Weng found only degenerative arthritis in plaintiff's knee and lumbosacral spine (Tr. 341-345). Moreover, there is no other evidence in the record which indicates an inability to work due to a physical impairment(s).

13

## **RECOMMENDATION**

AND NOW, this        day of                 , 2008, it is respectfully **RECOMMENDED** that defendant's motion for summary judgment be **DENIED;** plaintiff's motion for summary judgment be **DENIED,** and the matter **REMANDED** to the Commissioner of the Social Security Administration in accordance with the sixth sentence of 42 U.S.C. Section 405(g).

S/ Linda K Caracappa

_____

**LINDA K. CARACAPPA**
**UNITED STATES MAGISTRATE JUDGE**